HILL v. WEIR et al.

(Circuit Court, W. D. North Carolina. November Term, 1887.)

1. DEED—DESCRIPTION—LAND CONVEYED—BURDEN OF PROOF.
   Plaintiff sued to recover certain land, claiming that it was comprised in the description of a tract conveyed to him. Held, that the burden of proof was on the plaintiff to establish the boundary for which he contended.

2. LIMITATION OF ACTIONS—COLOR OF TITLE—ADVERSE POSSESSION.
   Certain defendants, in a suit to recover lands, showed a duly registered deed for the land, and that 20 years ago they built some houses on it for tenants, which were at times vacant, and the land was not cultivated, when the houses were not leased. Held, that the deed was good color of title; and if the defendants kept the houses under their control, even if at times unoccupied, they must constitute notice of adverse possession.[1]

At Law. Action to recover possession of realty.

Alex Hill, plaintiff, sued S. C. Weir and others, defendants, to recover certain lands.

Jones & Shuford, for plaintiff.

Davidson & Martin, Moore & Cummings, and C. M. McLoud, for defendants.

DICK, J., (charging jury.) The documentary evidence in this case is voluminous, and the oral testimony is extensive, varied, and somewhat conflicting. The general practice of this court requires all questions of law involved in a case to be settled before arguments are made to the jury. In federal courts the jury have nothing to do with determining questions of law, and counsel cannot properly argue such questions before the jury; but, as this is an action for the recovery of land, and our state statute authorizes counsel to argue both questions of law and fact to the jury, I have in this case conformed to the state practice. You must, however, take the law as laid down by the court, and not adopt the opinions of counsel in forming your verdict.

There is no United States statute that prevents a federal judge from expressing an opinion on questions of fact, and he is not controlled by a state statute that prohibits a state judge from so doing. I have no disposition in this case to express an opinion as to the material evidence offered, as the evidence is conflicting, and has been fully and ably presented by counsel. I can properly express an opinion as to the relevancy of testimony, and may do so, in some instances, in my charge. A jury is not bound to adopt the opinion of a judge as to the weight of testimony on isolated questions of fact, but may form, and be governed in their verdict by, their own opinions. When the decided preponderance of the evidence is in favor of one side of the case, then a federal

[1] Color is not every pretense or claim of title, but consists in a writing or conveyance of some kind purporting to convey the land under which the claim of title is asserted. Armijo v. Armijo, (N. M.) 13 Pac. Rep. 92. Any instrument purporting upon its face to convey title to the grantee is sufficient to constitute color of title. Swift v. Mulkey, (Or.) 12 Pac. Rep. 76, and note; Webber v. Clarke, (Cal.) 15 Pac. Rep. 431. See Weineg v. Holcomb, (Iowa,) 34 N. W. Rep. 787.

judge has a right to direct a jury how to find a verdict. This power of a judge is neither unreasonable nor unjust, as he can grant a new trial, and it is his duty, in the administration of justice, not to allow a verdict to stand that is contrary to the weight of the evidence. I will not exercise this power, at this stage of this case, as I believe that you will find a just verdict.

The adjoining tracts of land belonging to the plaintiff and to the defendants once constituted a part of a large tract of land that was the property of James R. Love, and on his death descended to his heirs at law as tenants in common. In 1857 these tenants in common filed a petition in the court of equity of the county for the purpose of having their lands sold, and the proceeds divided among themselves. In order that the lands might be sold to the best advantage, the court directed a survey and division of the lands into smaller tracts, and appointed Mr. Blackstocks, an intelligent and experienced surveyor, to make a suitable survey and division. As this extensive tract of land was situated in a wild and mountainous region, and an accurate survey could not be made without considerable difficulty and expense, he determined to plat the land by mere estimation as to area,—by using well-known public roads and a few natural objects as boundaries,—and by designating the separate tracts as lots No. 1, 2, 3, 4, etc. The deed to the lot claimed by plaintiff calls for the "Broyles Old Road" as its western boundary; and the deed to the lot claimed by the defendants calls for the same road as an eastern boundary; and the issues made in this action require you to locate that boundary line by the evidence. Where is the "Broyles Old Road?" is the principal question of fact for your determination.

The difficulty in this matter arises from the fact that Broyles constructed two roads across the mountains at different gaps, in 1831 and 1822. The road first partially constructed was found, in a short time, to be impracticable for general travel, and was soon abandoned; and the second road was built, crossing the mountains at the Ramsey gap. The plaintiff contends that the first road constructed by Broyles was the old road referred to in his deed, as it was the oldest, and was certainly known as the old road about the period of construction. The defendants insist that this first road was never completed, and was never used by the traveling public, and, at the time Mr. Blackstocks made his survey, was rendered impassable by forest growth and other obstructions caused by non-user and time. Both of the roads were more than 25 years old when the survey was made, and the defendants insist that the second road, which alone was used, was then generally known as the "Broyles Old Road." You are not called upon to decide which road was the oldest, but which one was adopted by Mr. Blackstocks as a boundary line in 1857.

Both deeds describe the old road as entering the Buncombe turnpike on the French Broad river, opposite the Upper Warm Springs; but there are none of the other descriptions usually contained in deeds, such as beginning corners, courses and distances, marked trees, calls for the lines of adjoining tracts, and plats of survey. The evidence shows that, in

the course of a mile, on the opposite bank of the French Broad, there were three or four places where hot water was found, and was at various times used for drinking and bathing purposes. The descriptions of boundary are not false, but only indefinite, and give rise to a latent ambiguity, as there are two roads, and different warm springs, and the matter can only be settled by extrinsic evidence. As this description of boundary was adopted by Blackstocks in 1857, you must place yourselves, as near as possible in his situation, and inquire as to which road was best known as the "Broyles Old Road" at the time of selection. He made no survey with compass and chain, and no accurate estimate as to area, and there is no evidence that he ever passed over either of the roads. He must, therefore, have been guided in his selection by the general reputation in the neighborhood, and you may well suppose that an intelligent and experienced surveyor, appointed by a court of equity to make a suitable survey, would select a well-known and distinctly defined boundary line. There is no hearsay evidence as to any declarations made by him as to the boundary line he adopted. You have the same kind of evidence that influenced him, as you have heard the testimony of old and intelligent men, who resided in the neighborhood, or were familiar with the locality, in 1857; and from the preponderance of the evidence you can determine which road was generally known and called the "Broyles Old Road" at that time. The road contended for by the plaintiff had gone out of use for more than 25 years, and was covered in many places with undergrowth, but it could still be distinctly traced in parts of its course. The road claimed by the defendant was still in use, but was in bad condition for vehicles, and many of the witnesses testify that it was then generally known and called the "Broyles Old Road."

The depositions of the old men in Tennessee who assisted Broyles in constructing both roads, are not applicable to the question of fact directly presented in this case, as they refer to the condition of the roads when first constructed, and not to their condition and general reputation when one of them was selected as a boundary line in 1857. You must confine your inquiry to such general reputation as was accessible to Mr. Blackstocks, and probably influenced his selection.

As the plaintiff is asserting his right to the land claimed by him in this action, the burden of proof is upon him to establish the boundary line for which he contends, as it is well settled in such action the plaintiff can only rely upon the strength of his own case. If you find that the Broyles old road, in 1857, commenced at the mouth of Cascade branch, and passed up the old Hoodenpile road, and thence over the mountains at the Ramsey gap, as marked on the plat of survey made by Mr. Justice under an order of this court, then you should find this issue in favor of the defendants, and such finding settles the whole case. If you find that the Broyles old road, in 1857, commenced at the bluff on the river, west of Mrs. Weir's house, and passed thence, as marked on Mr. Justice's survey, to the Low gap, about a mile west of the Ramsey gap, then you should find in favor of the plaintiff as to all of the

land in controversy, except the 15 or 20 acres occupied by the defendants Mrs. Weir and Mr. Good, tenants of the defendant Garrett.

As to this small tract of land the defendants claim title acquired by seven years possession under a deed from one Gable, which has been duly registered, and in which there are clearly designated boundary lines, that can be easily ascertained and located. I instruct you that this Gable deed is good *color of title*, but it becomes necessary for you to locate the boundaries from the evidence.

The old grants and deeds to Nelson, Conway, Dagger, and others, introduced in evidence, and relating to adjoining and adjacent tracts, tend to establish the corners, courses and distances, and lines of the Gable deed, but there are some discrepancies that tend to produce some confusion in the boundaries. The survey made by Mr. Justice according to the deeds of the defendants, and their construction of the old grants of the adjoining and adjacent tracts of land, fit up like brick-work, and clearly establish the corners and lines of the Gable deed as claimed by defendants. The survey made as contended for by the plaintiff produces confusion in the boundaries of all the tracts, and the Gable land cannot be definitely located, as it would include land on both sides of the French Broad river, which, in the Gable deed, is called for as a boundary line.

If you locate the Gable land, as contended for by the defendants, then the question of fact arises, whether the defendant Garrett, by himself or his tenants, has had open, visible, notorious, and continuous possession, claiming and exercising ownership over the same for seven years before the bringing of this action. It is conceded that the defendant Garrett has had possession of the land at different times for more than seven years, but it is insisted that his possession has not been notorious and continuous for any connected period of seven years. The evidence shows that defendant Garrett, 20 years ago, claimed the land, and built some small houses that were occupied by his tenants for a year or two at a time; that said houses were sometimes without occupants for more than a year, and the land was not used for farming purposes except when in the possession of tenants. I think the law is well settled in this state that the possession which will ripen into a title under our statute of limitations must be indicated by such acts as are sufficient to notify all claimants that the party in possession is claiming the land as his own, and must be so continuous or repeated as to show that they are done in the character of owner, and not of an occasional trespasser. This possession should be so visible and continuous as to afford any adverse claimant notice and opportunity to assert his title in an action at law.

The building of a house is a very positive and decided act of ownership, and well calculated to give continuous notice to adverse claimants, and prompt them to bring an action against an intruder exercising such acts of dominion over the land. The building of a house is the highest evidence of ownership, and of a purpose to assert title and maintain permanent possession of land. It is not necessary that such house should always be occupied by a tenant of the builder, if he has

often leased the same, keeps the key when unoccupied, and is ever ready to rent the premises when applied to by a person desiring a house. As long as the house is under the control of the claimant, it is the symbol of his ownership, and asserts his possession and right of possession against all mankind.

If you find from the evidence that the defendant Garrett has exercised the acts of ownership that I have described for seven years, then you should find this issue in favor of the defendants. The case is now with you for your consideration and action.

The jury returned a verdict in favor of the defendants on all the issues submitted to them.